DAVID M. SIMPSON, Appellant, v. BOARD OF SUPERVISORS OF KOSSUTH COUNTY et al., Appellees.

**DRAINS:** Establishment—Jurisdiction—Return of Engineer—Boundaries of Appropriated Land—Irregularity Only. The exact boundaries *of the land to be appropriated* by a proposed public drainage improvement should specifically and definitely appear from the engineer's return—that is, from his report or plat. Omission to so show will not undermine jurisdiction to proceed —is a mere *irregularity*, and waived if not duly raised before the board of supervisors and by appeal from an adverse decision —*when the report or plat contains such facts as that therefrom such exact boundaries may be determined.* (Section 1989-a2, Code Supplement, 1913.)

**DRAINS:** Establishment — Recommendations of Engineer — Conclusiveness. Principle recognized that a public drainage improvement must be established in accordance with the recommendations of the engineer, or not established at all.

**EMINENT DOMAIN:** Proceedings to Take—Strict Compliance. Principle recognized that, in the exercise of the power of eminent domain, strict compliance with statutory procedure is exacted.

**DRAINS:** Establishment—Appeal—Scope of Inquiry. Principle recognized that, upon appeal to the district court from an order establishing a public drainage improvement, no objections will be considered except those *which have been properly raised before the board of supervisors.* (Section 1989-a3, Code Supplement, 1913.)

**INJUNCTION:** Nature and Form of Remedy—Existence of Other Remedy—Void and Voidable Acts Distinguished. One may not resort to injunction when a special remedy is provided for the correction of voidable acts.

PRINCIPLE APPLIED: A petition praying for the establishment of a public drainage improvement was filed. An engineer was appointed. His return did not, as the law required, specifically and definitely show the exact boundaries of the land which would be appropriated by the improvement, but did show facts from which such exact boundaries could be determined. This omission was held to be an irregularity only—a voidable act. An objecting property owner made the drag-net objection before the board of supervisors that the board was without jurisdiction to establish the improvement. The objection was overruled. The objector did not appeal, but later sought to enjoin all proceedings. *Held*, the law had provided him with a special remedy, appeal, which was exclusive, and, assuming that the question of the engineer's defective report was raised before the board, his failure to appeal exhausted his remedy.

**EMINENT DOMAIN:** Nature of Power—Procedure—Drains. Upon discovering that the land condemned for a public drainage improvement is insufficient, the board of supervisors has no power to condemn additional land except by strict compliance with the procedure governing an original condemnation. So held where the board attempted to condemn such additional lands by the simple expedient of a resolution, and by entering, in favor of the landowner, an additional allowance as damages. (Section 1989-a2, Code Supplement, 1913.)

*Appeal from Kossuth District Court.—N. J.* LEE, *Judge.*

TUESDAY, MAY 22, 1917.

REHEARING DENIED MONDAY, SEPTEMBER 24, 1917.

SUIT in equity to enjoin the contractor and joint boards of supervisors in a drainage proceeding from entering upon the premises of appellant to excavate a ditch. The facts are fully stated in the opinion.—*Reversed.*

*P. A. Bronson, Thos. S. Donnelly, Mayne & Green,* for appellants. *Quarton & Quarton, Morse & Kennedy,* and *Harrington & Dickinson,* for appellees.

STEVENS, J.—Prior to June 17, 1914, a

1. DRAINS: establishment: jurisdiction: return of engineer: boundaries of appropriated land: irregularity only.

petition was filed in the auditor's office of both Kossuth and Emmet Counties praying the establishment of a joint drainage district. After due notice to the parties entitled thereto, the boards met in joint session, and, on July 17, 1914, passed a resolution establishing the proposed district, designating it as the Emmet and Kossuth County Drainage District No. 2. The engineer appointed by the respective boards to make preliminary survey and report as to the feasibility and practicability of the proposed improvement, on March 3, 1914, submitted his report recommending the establishment of the proposed district, and filed plat and profile showing the land to be included within the district, and the location, route and terminus of the proposed ditch. The report of the engineer recommended a ditch 12 feet wide on the bottom, with side slopes of one to one, but neither the report of the engineer nor the resolution of the boards of supervisors fixed the width of the right of way sought to be taken for the use

of the public in the construction of the improvement. The appraisers appointed by the respective boards of supervisors to appraise damages estimated that the right of way required would be 85 feet, and computed the amount of damages to be awarded to each of the several property owners upon that basis. After the work of excavation began, it became apparent that the 85-foot right of way was not sufficient, and that the spoil bank had to be placed so near the ditch that the earth therefrom would wash into the ditch, causing it to fill. The report and plan of the engineer provided that a berm should be left on each side of the ditch, 8 feet in width, but, on account of the peculiar character of the soil, it was found that the earth removed spread to such an extent as to require a right of way of from 100 to 120 feet in width. To meet this contingency, the boards of supervisors, acting jointly, without notice or other proceeding of any kind, on October 29, 1915, passed a resolution reciting in substance the fact that the engineer had recommended making the total width of the right of way 120 feet instead of 85 feet, and ordering that the landowners affected should be allowed additional damages, the amount of which being specified in said resolution. On April 11, 1916, appellant filed a petition in the office of the clerk of the district court, reciting, in substance, the matters above stated, and alleging that the proceedings of the respective boards in the matter of establishment of said drainage ditch had not been in conformity to the statutes, that defendants were attempting to deprive him of his property, in violation of the Constitution of Iowa and of the United States, without due process of law, that defendant Walb, who was the contractor doing the work, was about to enter upon his premises for the purpose of excavating the ditch, without authority to do so, and praying a temporary writ restraining the contractor and boards of super-

visors from entering upon his premises for the purpose of constructing said ditch, and that upon final hearing the injunction be made permanent. Temporary writ was issued, but, upon final hearing, was dissolved, and judgment entered in favor of the defendants.

Plaintiff appeals from the finding, order, and judgment of the district court dissolving the temporary injunction and rendering judgment in favor of the defendants.

I. Appellant's principal contention is that an attempt is being made to deprive him of his property without due process of law. He rests this contention upon the claim that the respective boards of supervisors of Kossuth and Emmet Counties, acting jointly, proceeded in the matter of the establishment of the district and the appropriation of a right of way over his property without having first acquired jurisdiction to do so.

The report of the engineer appointed by the boards to make the preliminary survey estimated that 94 acres would be required for right of way. The plat filed by him indicated the commencement, route and terminus of the ditch, but neither the report nor the plat contained a statement or designation of the exact boundaries of the land sought to be condemned. Appellant filed a claim for damages in the sum of $15,000. The engineer who made the preliminary survey, with two other freeholders appointed to appraise damages, reported the amount of damages sustained, including the value of the land taken, by each of the property owners in the district. Appellant was allowed $1,248. Damages were allowed for the value of the land taken at the rate of $140 per acre, from which it appears that something over 8 acres of the right of way were taken from the land of the appellant. The report of the survey made by the engineer and the appraisement of damages were each

approved by the boards of supervisors, in joint session, and the improvement finally established.   Before the final order of establishment was entered, appellant filed objections thereto, upon the grounds, in substance, that the ditch was not a public necessity; that its establishment would amount to the taking of private property without adequate compensation; that sufficient drainage already existed; and that the boards of supervisors were without jurisdiction to establish the same: but said objections did not point out specifically the defects in the report of the engineer now complained of.   The objections of appellant being denied and the improvement established, appellant, in due time, served notice of appeal from the order of establishment to the district court of Kossuth County, but failed to perfect his appeal by filing petition in the office of the clerk of the district court, as required by law.   An appeal was also taken by him from the award of damages and also from the classification of the lands for assessment and the assessment of benefits.   Both of these appeals were pending in the court below at the time of the trial of this case.

After the work of excavation had begun, it appeared that, on account of the peculiar condition of the soil and other conditions prevailing, a strip of more than 85 feet in width would be required.   The engineer thereupon recommended to the respective boards of supervisors that a further strip of 35 feet in width be appropriated, making the total width of the land proposed to be taken 120 feet.   The boards of supervisors, without notice to the property owners or other preliminary action, by resolution approved the recommendation of the engineer, and awarded damages to appellant for the extra land proposed to be taken, at the same rate per·acre, apparently, as previously.

It appears to be conceded by appellant that the proper notice was given the property owners of the petition filed in the office of the county auditor and of the proceedings

for the proposed establishment of the improvement, so that no question of jurisdiction is urged on account of the failure to give the proper notice.

The real question presented is whether the matters complained of were mere irregularities or go directly to the question of jurisdiction. So far as material to the question presented, the drainage statutes provide as follows:

"Sec. 1989-a2. * * * He shall make return of his proceedings to the county auditor, which returns shall set forth the starting point, the route, the terminus or termini of the said ditch or ditches, drain or drains, or other improvements, together with a plat and profile showing the ditches, drains or other improvements, and the course and length of the drain or drains through each tract of land, together with the number of acres appropriated from said tract for construction of said improvement, * * * and the description of each tract of land therein and names of the owners thereof as shown by the transfer books in the auditor's office, together with the probable cost, and such other facts and recommendations as he may deem material.

"Sec. 1989-a6. * * * any party aggrieved may appeal from the finding of the board in establishing or refusing to establish the improvement district or from its finding in the allowance of damages to the district court by filing notice with the county auditor, * * * If the appeal is from the action of the board in establishing or refusing to establish said drainage district, the court shall enter such order as may be proper in the premises, and the clerk of said court shall certify the same to the board of supervisors, who shall proceed thereafter in said matter in accordance with the order of the trial court.

"Sec. 1989-a46. The provisions of this act shall be lib-

erally construed to promote the leveeing, ditching, draining and reclamation of wet, overflow or agricultural lands; the collection of the assessments shall not be defeated, where the proper notices have been given, by reason of any defect in the proceedings occurring prior to the order of the board of supervisors locating and establishing the levee, ditch, drain or change of natural watercourse provided for in this act, but such order or orders shall be conclusive and final that all prior proceedings were regular and according to law unless they were appealed from."

2. DRAINS: establishment: recommendations of engineer: conclusiveness.     The provisions of the foregoing statutes require that, before action is taken by the board of supervisors, there shall be on file in the office of the county auditor the report of a competent, disinterested engineer, recommending the improvement, and the board is limited to the establishment of the improvement as recommended. This report is necessary to the jurisdiction of the board of supervisors. *Hartshorn v. District Court,* 142 Iowa 73.

3. EMINENT DOMAIN: proceedings to take: strict compliance.     In so far as the board of supervisors, in drainage matters, seeks to condemn land for public use, such board proceeds under the right of eminent domain. In the absence of legislative authority, the board would be wholly without jurisdiction to condemn land for ditch purposes; hence, in exercising such power, the board must follow strictly the form of procedure enacted and provided by the legislature. *Hartshorn v. District Court,* 142 Iowa 73; *Sisson v. Board of Supervisors,* 128 Iowa 442; *Metlar v. Middlesex & S. Traction Co.,* (N. J.) 63 Atl. 497; *McLeod v. South Deerfield Water Supply District,* (Mass.) 78 N. E. 764.

Statutes granting this power are strictly construed, and jurisdiction or authority granted by such statutes can only

be exercised in the manner pointed out thereby. Mr. Justice Deemer, speaking for the court in *Gano v. Minneapolis & St. L. R. Co.*, 114 Iowa 713, said:

"But notwithstanding the right is one which appertains to sovereignty, when the sovereign power attaches conditions to its exercise, the inquiry whether the conditions have been observed is a matter for judicial cognizance. This is simply a reaffirmation of what Chief Justice Marshall said in *Barron v. City of Baltimore*, 32 U. S. 243 (8 L. Ed. 672), as follows: 'That the right of eminent domain applies to every independent government. It is an incident to sovereignty, and requires no constitutional recognition.' The legislature cannot, strictly speaking, delegate this power, but may select such agencies to exercise it, and may confer on them such rights, as are not forbidden by the Constitution. It follows then that the power, except when assumed by the sovereign itself, can be exercised only in virtue of a legislative enactment, and that the time, manner, and occasion of its exercise are wholly in the control of the legislature, except as it may be restrained by the fundamental law. *Bachler's Appeal*, 90 Pa. St. 207; *Swan v. Williams*, 2 Mich. 427; *Wilkin v. Railroad Co.*, 16 Minn. 271 (Gil. 244); *Secombe v. Railroad Co.*, 23 Wall. 108 (23 L. Ed. 67). The authority must be expressly given, and strictly pursued. *Creston Water Works Co. v. McGrath*, 89 Iowa 502, Lewis, Eminent Domain, and cases cited. The jurisdiction is limited, and can only be exercised in the manner pointed out by statute. *California Pac. R. Co. v. Central Pac. R. Co.*, 47 Cal. 549."

"The order of taking must contain a description of the land included in the limits of the new public work so that it will identify a definite tract of land as certainly as is required in the case of a conveyance of land, or in the proceedings for condemnation by judicial decree, and any doubt

in the description is resolved in favor of the owner." Section 393, Nichols on Eminent Domain (2d Ed.). See also *Mathias v. Carson,* 49 Mich. 465; 15 Cyc. 855.

Section 1989-a2 requires the engineer to include in this report: "* * * a plat and profile showing the ditches, drains or other improvements, and the course and length of the drain or drains through each tract of land, together with the number of acres appropriated from said tract for construction of said improvement, * * *"

The engineer appointed for the designated purpose must set forth in his report the exact width, boundaries and location of the right of way required for the improvement and sought to be condemned by the board of supervisors for that purpose. This is required by the statute, which, in so far as the same seeks to take private property for public use, must be strictly construed. This is not in conflict with the provision of the statute which requires the drainage act to be liberally construed to carry out its purpose. The report of an engineer recommending the proposed drainage improvement is jurisdictional, and as to such matters the statute is mandatory, and must be strictly followed. Unless the proceedings conform strictly to the statutory requirements as to jurisdictional matters, the board will be without authority, unless such statutory requirements are waived by the person affected.

The case, however, presented is not one

4. DRAINS: establishment: appeal: scope of inquiry.

in which there was no report of the engineer, for he did report the boundaries of the land to be included in the district, the commencement, route and terminus of the proposed ditch, without, however, designating the exact boundaries of the land required to be taken for the improvement. Upon appeal from the order of establishment, every objection urged against

the proposed scheme of drainage may be reviewed and passed upon by the district court upon the hearing of such appeal, but only such objections as were made before the boards of supervisors will be considered by the district court. *Lyon v. Sac County,* 155 Iowa 367; *Lightner v. Greene County,* 145 Iowa 95; *In re Jenison v. Greene County,* 145 Iowa 215; *Kelley v. Drainage District,* 158 Iowa 735.

The complaint now made of the engineer's report was not made before the boards of supervisors, except in so far as same might possibly be implied from the general objection that the boards were without jurisdiction to establish the district. Had this objection been urged before the boards of supervisors, an order could have been made directing the engineer to amend his report so as to remedy the defects therein. Upon the failure or refusal of the boards to take the proper action in the matter, the district court, upon appeal, had full authority to have the error corrected. In *Hartshorn v. District Court,* 142 Iowa 72, this court said:

"That upon appeal to the district court in such cases the court may pass upon the order appealed from, affirming or reversing the same, and making such orders for the direction of the board of supervisors as may be proper for giving effect to the court's judgment or decree."

See also Section 1989-a6, quoted above.

Notwithstanding the duty of the engineer to indicate upon his plat or in his report specifically and definitely the exact boundaries of the land to be appropriated, yet, if his report or plat contained such facts as that therefrom true lines and boundaries of land to be appropriated can be ascertained or computed, the situation would not be the same as it would have been had there been no report of an engineer. In *Kelley v. Drainage District,* 158 Iowa 735, the report of the engineer omitted the description of several

tracts included and the names of the owners.   The court, in passing upon the question there presented, said:

"A description which when followed up will enable an engineer to ascertain precisely the lands intended is [not] so defective as to render all subsequent proceedings illegal and void for want of jurisdiction."

See also *In re Drainage District No. 3, Hardin County,* 146 Iowa 564.

As above suggested, the omission in question was one that the boards of supervisors had authority to direct the engineer to correct, and, doubtless, would have done so had their attention, at the time, been called thereto.   The engineer could readily have marked out the boundaries on his plat with precision.   It therefore seems clear that the omission is only an irregularity which could easily have been corrected by the engineer, and that appellant, failing to appeal from the finding and order of the boards, must be held to have waived such irregularity.   Such is the plain provision of the statute quoted above.

5. INJUNCTION: nature and form of remedy: existence of other remedy: void and voidable acts distinguished.

Injunction to restrain the proceedings of an inferior tribunal will only be granted when same are wholly void.   If voidable only, injunction will not lie.   The finding of the board in the case at bar was not, as to the above matters, wholly void, but at most voidable, and could have been corrected by the district court upon appeal.   This remedy having been provided by statute, and the finding and order of the boards of supervisors being voidable only, the remedy by appeal should have been followed.   This court, in *Clifton Land Co. v. City of Des Moines,* 144 Iowa 625, referring to the point, said:

"Save only in cases where the order of proceedings sought to be enjoined is absolutely void,—not voidable merely,—it is well settled that a special remedy created by statute is exclusive as to all the controversies coming with-

in its scope, and if a party to whom such remedy is given fails to take advantage of it, he cannot resort to equity for relief. *Nixon v. Burlington,* 141 Iowa 316; *Reed v. Cedar Rapids,* 137 Iowa 107; *Andre v. Burlington,* 141 Iowa 65; *Owens v. Marion,* 127 Iowa 469; *Minneapolis & St. L. R. Co. v. Lindquist,* 119 Iowa 144; *Stevens v. Carroll,* 130 Iowa 463. The remedy by appeal was broad and ample, the district court being given by the statute above cited full power to hear and try every objection properly raised, and to set aside, vacate, or modify the assessment complained of, and generally to make such order as the city council ought to have made in the premises, or remand the proceedings with proper orders and directions for further proceedings in harmony with the findings of the court."

It therefore follows that the decree of the court below in favor of appellees, in so far as the foregoing matters are concerned, must be sustained.

6. EMINENT DO-
MAIN: nature
of power:
procedure:
drains.

II. After the work of excavation was begun, it was found that the 85-foot right of way was insufficient, and the engineer in charge reported said fact to the respective boards and recommended that the right of way be widened to 120 feet and that damages be allowed therefor. Acting upon this recommendation, a resolution was adopted by the board of the proper county approving the same, and allowing appellant the further sum of $404.60, the same being for 2.89 acres at the price previously fixed.

Counsel for appellee suggest that, while the proceedings to condemn the extra 35-foot strip may not be regular, appellant will not be prejudiced on account thereof. It may be that, upon the trial of his claim for damages, appellant could show the extent and real value of the land taken, but counsel here confuse the legal right of appellant with a favorable situation resulting from a combination of cir-

cumstances, including the enforced delay in completing the improvement in question.

The question presented must be determined upon the basis of his rights as they existed before the final order of establishment, and not in view of favorable circumstances subsequently accruing to him. This court has often held, as above suggested, that it is the duty of a property owner to raise every objection which he may have to the improvement before the final order of the board is entered, and, in doing this, he need not anticipate the happening of future events and circumstances not contemplated by the statute, or order of the board of supervisors.

What we have said above is sufficient to show that appellees are wholly without authority to appropriate the 35-foot strip in the way attempted. The statute provides no such way of condemning private property for public use. The authorities cited above are conclusive upon this question. Defendants should have been restrained from entering upon or using any part of the 35-foot strip referred to in the engineer's report.

In so far, therefore, as the decree of the lower court is inconsistent with this finding, same is reversed, and the cause remanded to the district court with directions to enter a decree in accordance herewith, pending further proceedings in the matter of obtaining further right of way. —*Reversed.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.